816 F.2d 337
 INTERNATIONAL CAUCUS OF LABOR COMMITTEES, Andrew Rotstein,
Judith Acheson and Robert Pierce, Plaintiffs-Appellants,
v.
CITY OF CHICAGO, an Illinois Municipal corporation, et al.,
Defendants- Appellees.
 No. 85-2948.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 17, 1986.
Decided April 14, 1987.
Rehearing and Rehearing In Banc Denied July 17, 1987.
 
 Howard C. Rubin, Dallas, Tex., for plaintiffs-appellants.
 Sharon Balwin, Corp. Counsel, Chicago, Ill., for defendants-appellees.
 Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 Plaintiffs-appellants, the International Caucus of Labor Committees ("ICLC") and three individual members, appeal the denial of their motion for a preliminary injunction and the dismissal of their claim against the defendants-appellees, the City of Chicago and its officers. Plaintiffs challenge the constitutionality of various rules and regulations promulgated by the City governing protected First Amendment activities at O'Hare International Airport.[1] Relying on International Society for Krishna Consciousness, Inc. v. Rochford, 585 F.2d 263 (7th Cir.1978), the district court held that the challenged regulations were facially constitutional. As plaintiffs did not allege facts to show that the regulations were overbroad, vague or improperly applied to them, plaintiffs' motion was denied and the case was dismissed. For the reasons set forth below we AFFIRM.
 
 
 2
 ICLC is an unincorporated association of persons dedicated to the dissemination of philosophical and political information to the public. Pursuant to the O'Hare regulations, the individual plaintiffs have received appropriate permits from the O'Hare authorities to conduct their activities in the airport. Plaintiffs do not challenge the permit procedure. They have repeatedly set up a table, hung signs from the table and stored literature under the table, in violation of the regulations. Based on this conduct, City officials revoked their permits, and this suit followed.
 
 
 3
 This court has previously held that the public areas of the terminal buildings at O'Hare Airport are a traditional public forum. Chicago Area Military Project v. City of Chicago, 508 F.2d 921, 925 (7th Cir.), cert. denied, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975). There has been no contention that plaintiffs' activities are not protected by the First Amendment. Therefore, in order to survive constitutional attack, the regulations must be content-neutral, serve a significant governmental interest, and leave open ample alternative channels for communication of the information. Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647-48, 101 S.Ct. 2559, 2563-64, 69 L.Ed.2d 298 (1981), quoting Virginia Pharmacy Board v. Virginia Citizens Council, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).
 
 
 4
 In Rochford, supra, we upheld a regulation almost identical to that of Regulation D, challenged here. 585 F.2d at 270 ("Subsection E prohibits the erection of a table, chair or other structure in areas other than leased space").[2] Plaintiffs in this case have alleged only that they have been prohibited from setting up tables; they have pleaded no facts to show that the restriction on tables and other structures has been applied to them in a discriminatory fashion, they have not claimed that Subsection D is vague or overbroad, nor have they offered any reason why we should overturn Rochford on this point. We decline to do so.
 
 
 5
 As to the other two challenged subsections, we also find them to be constitutional. First, they are plainly not based on either the content or subject matter of the speech. Heffron, 452 U.S. at 648-49, 101 S.Ct. at 2564-65. Second, the regulations also serve a significant governmental interest. "[A] state's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." Id. at 650, 101 S.Ct. at 2565. The "characteristic nature and function" of the forum must be considered in assessing the constitutionality of the regulation. Id. at 650-51, 101 S.Ct. at 2565-66. Nothing in the Constitution requires the government to grant unlimited permission to all who wish to exercise their right to free speech on every type of government property, without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). As held in Rochford, the City has valid concerns about expediting the processing of travelers, maintaining the free and orderly flow of traffic, and avoiding the disruption of normal airport activities. 585 F.2d at 268-69. Prohibitions on the use of banners or signs that exceed the body width and on the storing of materials, except in a carry bag that must be carried or harnessed, are reasonably related to the City's legitimate interests. Moreover, there are ample alternative methods of communication open to plaintiffs at O'Hare Airport. Indeed, the only restrictions are on the physical props that they may utilize in order to help spread their message. Reasonable time, place, and manner restrictions, based on the nature of a place, and narrowly tailored to the state's legitimate interests, are permitted. Grayned v. City of Rockford, 408 U.S. 104, 115-16, 92 S.Ct. 2294, 2302-03, 33 L.Ed.2d 222 (1972). For the reasons previously discussed, these regulations are reasonable, are based on the nature of airport traffic, and are narrowly tailored to the City's significant interest in airport safety and efficiency.
 
 
 6
 Finally, we reject plaintiffs' argument that to require them to do more than plead a restriction on their conduct will eliminate all challenges to regulations of First Amendment activity. While it is axiomatic that plaintiffs' factual allegations must be accepted as true and that a claim should not be dismissed unless it appears that plaintiffs can prove no set of facts which entitle them to relief, Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir.1985), this does not excuse them from the requirement that the facts as alleged must state a cause of action. Because plaintiffs alleged no more than the existence and nondiscriminatory enforcement of the regulations, determination of their constitutionality is proper upon the filing of a motion to dismiss. Cf. Eames v. City of Logan, Utah, 762 F.2d 83, 86 (10th Cir.1985) (no error in dismissal of plaintiffs' First Amendment claim).
 
 
 7
 AFFIRMED.
 
 CUDAHY, Circuit Judge, dissenting:
 
 8
 This seems to be one of those close cases where a dismissal of the complaint is made to do the work of summary judgment. Unlike the majority I conclude that the plaintiffs have stated a claim upon which relief can be granted.
 
 
 9
 The plaintiffs have alleged that they want to set up tables at O'Hare from which to display and distribute their literature but that O'Hare regulations prohibit tables. See Complaint at paragraphs 11, 22-25, 27. O'Hare is certainly a traditional public forum, see Chicago Area Military Project v. City of Chicago, 508 F.2d 921, 925 (7th Cir.1975), and distributing political or philosophical literature is certainly traditional first amendment activity, see Heffron v. International Soc'y for Krishna Consciousness, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). Thus, when the plaintiffs allege some specific way in which the defendants have hindered them from engaging in this activity, see Complaint at paragraphs 22-28, and when they allege that the O'Hare regulations are unconstitutional restrictions on first amendment rights, see Complaint at paragraphs 16-19, they appear to assert a claim capable of surviving immediate dismissal. Cf. Wingate, A Special Pleading Rule for Civil Rights Complaints: A Step Forward or a Step Back?, 49 Mo. L. Rev. 677 (1984) (criticizing tendency to apply stricter pleading rules in civil rights cases).
 
 
 10
 The district court and the majority find a basis in International Soc'y for Krishna Consciousness v. Rochford, 585 F.2d 263 (7th Cir.1978), for deeming the O'Hare table regulation to be constitutional, absent some showing of discriminatory enforcement or vagueness or overbreadth. I disagree with this thesis for two reasons. First, Rochford did not really adjudicate the constitutionality of O'Hare's very similar predecessor regulation prohibiting tables (which apparently dated from 1976). Rather, the court in Rochford noted that the anti-table provision of the regulations was not being challenged, and, because on its face the provision did not limit the "exercise of guaranteed rights," the court merely declined to find it unconstitutional. Rochford, 585 F.2d at 270. This treatment of an issue not raised by the parties in Rochford does not invoke res judicata, collateral estoppel or even in any compelling sense stare decisis. This court has really never evaluated the constitutionality of a regulation prohibiting tables that are alleged to be an integral part of traditional first amendment activity.
 
 
 11
 Second, even if this court had previously approved the predecessor regulation, the validity of a particular time, place or manner restriction is contextual--if the regulatory scheme is recast, then the facial validity of a particular regulation may be put in issue. See Heffron, 452 U.S. at 651, 101 S.Ct. at 2565 (emphasizing the context of regulations). In the present case, new O'Hare regulations seem to have placed significant burdens on any group desiring to pass out literature. The table prohibition must be evaluated in that light.
 
 
 12
 My final point is more general. The new O'Hare regulations not only prohibit the use of tables, but also limit the size of posters and restrict one's ability to carry and store literature in the airport. The regulations would thus seem to work a significant hardship on groups that wish to distribute literature at O'Hare. The plaintiffs allege, albeit in a somewhat conclusory way, that their proposed first amendment activities are significantly hampered. The court's role in these circumstances is not simply to outline the city's probable justifications for the regulations. The city should be required to show, at least by affidavit, that the regulations are narrowly tailored to serve a significant governmental interest and that they preserve adequate forums for the plaintiffs' activities. See Board of Airport Comm'rs v. Jews for Jesus, Inc. 55 U.S.L.W. 4855 (June 15, 1987) (explicit prohibition of all 'First Amendment activities' at airport, including distribution of literature, is unconstitutional); Perry Ed. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).
 
 
 13
 All of this is not to say that I am sanguine of the plaintiffs' prospects for ultimately prevailing. Given the hundreds or thousands of organizations or individuals who might want to set up a table at O'Hare, a prohibition against this kind of action seems not at all unreasonable. What strikes me as a problem more realistically in contention is the apparently severe restriction on storage places for literature that is to be passed out.
 
 
 14
 The plaintiffs' allegations may well be easy meat for summary judgment, but I believe the present complaint adequately states a claim upon which relief can be granted. If it is immediately obvious that the claim is unmeritorious, summary judgment should be available.
 
 
 15
 I therefore respectfully dissent.
 
 
 
 [1]
 Plaintiffs challenge the following regulations:
 * * *
 D. Erect any table, chair, or other structure other than in a leased space, and/or use any wheeled or stationary device, since such objects create a dangerous obstruction to other persons using the Airport facilities and substantially interfere with rapid and efficient Airport operation;
 E. Carry any banners or signs except where such equipment can be adaptable so as not to protrude beyond the persons front or rear or excede body width;
 F. Store any literature or any other materials in any public use area or in any parking areas, restroom facilities, terminal doors, stairways, vestibules, and storage areas used by the Airport or its concessionaires and lessees, except in a carry bag which must be carried or harnessed so as not to extend beyond the holders body width, where such materials will be an obstruction to persons using the airport facilities, or creates a health, safety, or security hazard; ...
 * * *
 
 
 [2]
 Although the dissent points out that the plaintiffs in Rochford did not specifically challenge Subsection E, this count found that "[b]ecause this section does not facially restrict the exercise of guaranteed rights, we do not find it constitutionally impermissible." 585 F.2d at 270