United States Court of Appeals,

Eleventh Circuit.

No. 94-6699.

The INTERNATIONAL CAUCUS OF LABOR COMMITTEES, Richard Boone, Reverend, individually and as a member of International Caucus of Labor Committees, Gary D. Kanitz, individually and as a member of International Caucus of Labor Committees, Gerald E. Berg, individually and as a member of International Caucus of Labor Committees, Plaintiffs-Appellees,

v.

The CITY OF MONTGOMERY, The City of Montgomery Police Department, John Wilson, in his official capacity as Chief of Police of the City of Montgomery, Defendants-Appellants.

July 17, 1996.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV 93-H-519-N), Truman M. Hobbs, Judge.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This case involves a challenge to the constitutionality of a city policy banning tables from city sidewalks. On two occasions, plaintiffs, The International Caucus of Labor Committees and three of its members, were distributing literature from a card table placed on the sidewalk when police told them to leave or submit to arrest. The district court found that The International Caucus is an organization devoted to altering the contemporary political landscape. It distributes literature and recruits new members in several ways. One of its preferred ways is to place tables in public areas in an effort to attract people to take its literature from these tables. Plaintiffs wrote a letter to the City explaining their desire to promote their views "by setting up literature tables at public sites." The City's responsive letter

banned tables from city sidewalks.  The letter stated in relevant

part:

> Your actions do not violate the laws of this city unless you
> impede the orderly flow of traffic in the streets and at the
> street corners.
>
> Your organization will not be allowed to set up tables or
> booths on the sidewalks of this city.  These tables or booths
> would create a partial blockage of pedestrian traffic and
> therefore will not be allowed on the sidewalks.  Your
> organization may set up tables or booths on private property
> where you have the permission of the property owner.

The City maintains that its policy is a complete ban of any tables

on all sidewalks.

Plaintiffs sued the City of Montgomery, its police department

and police chief, seeking a declaration that the City's policy

violated plaintiffs' First Amendment right of free speech and to

enjoin the City from denying plaintiffs the right to distribute

political literature from tables placed on the sidewalks.

The district court, in a carefully constructed opinion,

entered a declaratory decree that the City's ban excessively and

unnecessarily infringes on the plaintiffs' rights guaranteed by the

First Amendment.  The court initially held that the placement of

tables on city sidewalks is subject to First Amendment scrutiny and

is therefore subject to the time, place and manner test set out in

*Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746,

2753-54, 105 L.Ed.2d 661 (1989).  The court then held *first,* the

City's ban on tables is content neutral;  *second,* it is

inappropriate to conclude on this record that the City's interests

are significant ones;  *third,* even if the City's interests are

viewed as significant, the regulation is not narrowly tailored to

serve those interests;  and *fourth,* since the ban fails the narrow

tailoring requirement, the court need not decide whether the ban leaves ample alternative means of communication open. The court denied an injunction with confidence that the defendants would abide the declaration that the ban is unconstitutional.

We reverse on the ground that a ban against tables on sidewalks does not implicate the First Amendment, and therefore we do not review the correctness of the district court's time, place and manner decision.

Preliminarily, there was some question as to whether the issue was properly before the Court. Some consideration has been given by the panel and in the supplemental briefing and reargument to the fact that the policy here challenged is in the form of a letter from the City Attorney, rather than being incorporated in a duly adopted city ordinance. The parties agree, however, that the policy of banning all tables from city sidewalks is the fixed policy of the City which will be enforced by the police, the transgression of which would lead to trouble for the plaintiffs. The parties are entitled to a decision on the constitutionality of such a policy. This Court has previously considered the constitutionality of an "unwritten" scheme for regulating newsracks in interstate areas. *Sentinel Communications Co. v. Watts,* 936 F.2d 1189 (11th Cir.1991).

The cases clearly hold that the distribution of literature is a type of speech protected by the First Amendment. *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Schneider v. State,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939); *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82

L.Ed. 949 (1938). The Supreme Court has repeatedly held that public streets and sidewalks are traditional public fora. *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988); *Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988); *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

There is little authority, however, to guide a decision as to whether the use of a portable table on a public sidewalk is constitutionally protected by the First Amendment. The Supreme Court apparently has never addressed that issue. Only the Seventh Circuit has directly held that the erection of a table is not constitutionally protected free speech. "Subsection E (of the Regulation) prohibits the erection of a table, chair or other structure in areas other than leased space.... Because this section does not facially restrict the exercise of guaranteed rights, we do not find it is constitutionally impermissible." *International Society for Krishna Consciousness v. Rochford,* 585 F.2d 263, 270 (7th Cir.1978). In a case involving an almost identical regulation where "the plaintiffs alleged only that they have been prohibited from setting up tables," the same court declined to "overrule *Rochford* on this point." *International Caucus of Labor Comms. v. City of Chicago,* 816 F.2d 337, 339 (7th Cir.1987). This authority is somewhat tainted by the failure of the plaintiff in *Krishna* to challenge that section of the regulation. But after later approval, that is clearly the law in the Seventh Circuit.

No other circuits appear to have dealt with the point. Several district courts have struggled with the issue, as did the district court in this case. Two cases in the Southern District of Florida go opposite ways. In *International Caucus of Labor Comms. v. Metropolitan Dade County, Fla.,* 724 F.Supp. 917, 920 (S.D.Fla.1989), Judge Zloch followed the Seventh Circuit cases in holding "that the use of tables is not expressive conduct protected by the First Amendment." He contrasted this with the use of signs which were held to be classified as expressive conduct protected by the First Amendment. In a later case which did not refer to that decision, Judge King, torn between the decision involving *newsstands* in *Graff v. Chicago,* 9 F.3d 1309, 1314 (7th Cir.1993) ("no person has a constitutional right to erect or maintain a structure on the public way."), *cert. denied,* --- U.S. ----, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994), and the *newsracks* decision by this Court in *Sentinel Communications Co. v. Watts,* 936 F.2d 1189, 1196 (11th Cir.1991) ("there is "no doubt' that the right to distribute and circulate newspapers through the use of newsracks is protected by the first amendment."), decided that portable tables for selling T-shirts carrying protected speech message "more closely resemble the newsracks in the *Sentinel* case" and fell within the constitutional protection of expressive conduct. *One World One Family Now v. City of Key West,* 852 F.Supp. 1005 (S.D.Fla 1994).

In Nevada, the district court followed Judge King's decision in holding that a portable table "facilitates" the freedom to distribute literature, distinguishing chairs, umbrellas, and boxes

which are not entitled to First Amendment protection. *One World One Family Now Inc. v. State of Nev.,* 860 F.Supp. 1457, 1463 (D.Nev.1994).

The district court in this case focused on the multitude of newsrack cases to conclude that the table facilitates distribution of information. *International Caucus of Labor Comms. v. City of Montgomery,* 856 F.Supp. 1552 (M.D.Ala.1994). It cast off Judge Zloch's decision and the Seventh Circuit decision as not reconcilable with longstanding First Amendment principles. The court thus held that the use of tables on a public sidewalk to distribute literature warrants consideration under the First Amendment. After finding that the complete ban was content neutral, the district court put the burden on the City to identify the interest of the City being served by the ban and to show that the ban was narrowly tailored to meet that interest. No consideration was given to any concern like that expressed by the judge who dissented from the dismissal of the complaint in the Seventh Circuit's *International Caucus* case, a concern which reflected a reasonableness standard as being appropriate: "Given the hundreds or thousands of organizations or individuals who might want to set up a table at O'Hare, a prohibition against this kind of action seems not at all unreasonable." *International Caucus of Labor Comms. v. City of Chicago,* 816 F.2d 337, 341 (7th Cir.1987).

In any event, with the lack of compelling authority or reasoning to the contrary, we follow the lead of the Seventh Circuit and hold that the prohibition against placing any table on a public sidewalk, for whatever purpose, does not implicate the

First Amendment.  The policy of the City implementing the ban need not be subjected to the various requirements demanded when an action infringes upon First Amendment speech.

First, in our judgment, the use of the newsrack cases as precedent for consideration of what other items or structures may be placed upon a public sidewalk is misguided.  Newsracks are *sui generis.*  They are best explained by Justice Holmes' remark that "a page of history is worth a volume of logic."  *New York Trust Co. v. Eisner,* 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921).  Since the replacement of newsboys, who had free reign to peddle newspapers in public places, the courts and public authorities have spent decades working out the law concerning the placement of newsracks in public places.  Because of the long tradition of sale of newspapers upon public streets which underlies all of that law, it is a mistake to import wholesale reasoning of those cases into the consideration of the regulation of other devices which might occupy public sidewalks.

Second, without the newsrack cases, there is virtually no authority which would prevent a City from deciding what can be placed upon a public sidewalk and what cannot.  It is public property.  The City authorities are in charge of that public property.

Third, as long as the regulations do not discriminate in an unconstitutional way, remain content neutral, and do not deprive any members of the public of the use of the property for its intended purpose, the City should not have to carry the burden to defend those regulations in federal court.  Thus, in a case of this

kind, the burden is on the plaintiff to show why any portion of public property should be burdened for private use. Aside from its First Amendment argument, the plaintiff here has not demonstrated any fact which would indicate that it could carry that burden.

Fourth, if the erection of a card table could ever be endowed with some modest First Amendment protection, such protection should only be afforded upon the plaintiffs' showing that use of the card table is *necessary* to the exercise of free speech rights. This is a threshold showing that must be made before considering whether the regulation involved is content neutral, serves a significant governmental interest, and is narrowly tailored enough to pass constitutional muster. The record in this case demonstrates nothing more than that use of a card table would be convenient, not that it is so necessary that without it the plaintiff's message would not be heard.

It should be recognized that a recurring problem with street regulation is that it allows the police to make *ad hoc* determinations about obstruction, interference with traffic, and nuisance factors so the City would run the risk that the regulation would be unevenly and discriminatorily applied. Precisely because of these considerations the authorities here settled on a complete ban, easy to read, easy to understand, and applicable to all. The policy under consideration here fully satisfies those concerns.

The district court erred in declaring the policy unconstitutional.

**REVERSED.**

ANDERSON, Circuit Judge, dissenting:

The majority today holds that the use of a table to facilitate speech enjoys no First Amendment protection at all unless such use is "necessary to the exercise of First Amendment rights." Majority at 2655. Because I believe that this is not the standard that has evolved through Supreme Court First Amendment jurisprudence, I dissent.

The Supreme Court has not expressly set forth a test for determining the degree to which conduct must be linked to protected speech to be entitled to some level of constitutional protection.[1] The closest the Court has come to articulating such a test is found in *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The city in *Plain Dealer* passed an ordinance prohibiting the private placement of any structure on public property, and it used that ordinance to deny the publisher of a local newspaper permission to place newsracks on sidewalks. *Id.* at 753, 108 S.Ct. at 2141-42. The Court indicated that regulation or restriction of conduct implicates the First Amendment when the "conduct [is] commonly associated with expression." *Id.* at 759, 108 S.Ct. at 2145.

The majority would limit to their facts the *Plain Dealer* opinion and similar cases involving newsracks, based on a perceived historical distinction between newsracks and other devices that facilitate speech. However, the Supreme Court has never drawn such

_____

[1]*See* LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-7, at 827 (2d ed. 1988) ("The trouble with the distinction between speech and conduct is that it has less determinate content than is sometimes supposed. All communication except perhaps that of the extrasensory variety involves conduct ... Expression and conduct, message and medium, are thus inextricably tied together in all communicative behavior....")

a distinction. To the contrary, the Court has held that the First Amendment is implicated in regulations banning newsracks containing commercial publications, *see City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), governing the amplification of music, *see Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), restricting the use of sound trucks, *see Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), and prohibiting the use of loudspeakers, *see Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948).

Had the Court adopted the majority's requirement that such devices be "necessary" to the speech itself, it would not have conducted the "time, place and manner" inquiry that it did in each of the cases cited above. It would simply have held that sound trucks, amplifiers and commercial newsracks are not "necessary" to the expression they broadcast (for surely the same expression could have been made without them), and thus are entitled to no constitutional protection whatsoever. This, however, the Court did not do.[2] Instead, the Court, consistent with its prior

_____

[2]It does not stretch the analogy to say that newsracks, loudspeakers and tables similarly enlarge the potential audience for a speaker's message. Just as a loudspeaker increases the number of people who can hear a spoken message, so too newsracks spread throughout a city increase the number of people who can receive a printed message. In the same way, a table on which literature is placed and to which posters are attached, as here, increases the potential audience for the message when compared with the number of people that could be reached by speaking with each individually. These devices all enhance the delivery of protected speech, and though they are not entitled to the same protections as the speech itself, they are entitled to the protections afforded by the "time, place and manner" test. As the Supreme Court noted in *Metromedia, Inc., v. City of San Diego,* 453 U.S. 490, 502, 101 S.Ct. 2882, 2889-90, 69 L.Ed.2d 800

jurisprudence, endeavored to balance the individual right of free expression with the "authority to give consideration, without unfair discrimination, to time, place and manner in relation to other proper uses of the streets." *Cox v. New Hampshire*, 312 U.S. 569, 576, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941); *see also Plain Dealer*, 486 U.S. at 763, 108 S.Ct. at 2147 ("Presumably in the case of an ordinance that completely prohibits a particular manner of expression ... the Court would apply the well-settled time, place and manner test.").

In my view, the proper threshold question is whether tables, when used to display expressive media such as books and posters, are commonly associated with a protected form of expression. A summary review of cases from Federal courts around the country reveals that tables are frequently used by those seeking to disseminate ideas and distribute literature on sidewalks, in airports, and in areas where people gather. *See, e.g., United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (table set up on sidewalk by group soliciting contributions and distributing literature); *PruneYard Shopping Center v. Robins,*

---

(1981):

> Billboards, then, like other media of communication, combine communicative and noncommunicative aspects. As with other media, the government has legitimate interests in controlling the noncommunicative aspects of the medium ... but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interest with the individual's right to expression.

447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (table set up on plaza of shopping mall by students seeking to solicit signatures for petitions); *Hedges v. Wauconda Comm. Unit School Dist. No. 118,* 9 F.3d 1295 (7th Cir.1993) (upholding school policy requiring that students distribute religious literature from table); *Paulsen v. Gotbaum,* 982 F.2d 825 (2nd Cir.1992) (upholding city rule restricting distribution of literature to stationary tables); *Northeast Women's Center, Inc., v. McMonagle,* 939 F.2d 57 (3rd Cir.1991) (information table set up by protesters at abortion clinic); *Birdwell v. Hazelwood School District,* 491 F.2d 490 (8th Cir.1974) (information table set up by military recruiter in hall of high school); *One World One Family Now, Inc., v. Nevada,* 860 F.Supp. 1457 (D.Nev.1994) (tables set up on public sidewalks by group selling message-bearing t-shirts); *One World One Family Now v. City of Key West,* 852 F.Supp. 1005 (S.D.Fla.1994) (same); *Texas Review Society v. Cunningham,* 659 F.Supp. 1239 (W.D.Tex.1987) (tables used by university student organizations distributing literature); *International Society for Krishna Consciousness, Inc., v. Rochford,* 425 F.Supp. 734 (N.D.Ill.1977) (dispute over regulations governing use of tables by groups soliciting in airport); *LeClair v. O'Neil,* 307 F.Supp. 621 (D.Mass.1969) (table set up in waiting room at welfare office by welfare advocacy organization).

In fact, the plaintiffs in this case commonly use tables to display and distribute their literature. *See International Caucus of Labor Committees v. City of Chicago,* 816 F.2d 337 (7th Cir.1987); *International Caucus of Labor Committee v. Maryland*

*Dept. of Transportation,* 745 F.Supp. 323 (D.Md.1990); *International Caucus of Labor Committees v. Dade County, Florida,* 724 F.Supp. 917 (S.D.Fla.1989). The evidence presented in this case demonstrates that the plaintiffs used a table in a manner commonly associated with expression. The district court noted that "[t]he tables upon which plaintiffs routinely display several stacks of assorted books, pamphlets, and newspapers enhance plaintiffs' ability to disseminate literature...." On both of the occasions during which the plaintiffs were forced to remove their table, the district court found that they were distributing literature from the table, and that books and literature were stacked on it.[3]

Applying the "commonly associated with protected speech" test suggested by the Supreme Court, I would conclude that the plaintiffs' use of tables to facilitate their speech enjoys some level of First Amendment protection, and that the time, place and manner analysis should be applied. This conclusion finds support in the above cited Supreme Court cases involving the analogous contexts of newsracks, sound amplification devices, and sound trucks. My conclusion also finds strong support in a recent en banc opinion of the Seventh Circuit. The plaintiffs' tables in this case are very similar to the newsstands at issue in *Graff v. City of Chicago,* 9 F.3d 1309 (7th Cir.1993) (en banc). One issue

---

[3]The district court noted that at no time did the plaintiffs' table obstruct the sidewalk or in any way impede the flow of pedestrian traffic. In fact, the court found that, "[f]rom the evidence it appeared that the objection [of pedestrians] was to persons attending the display tables and approaching pedestrians in an effort to interest them in available literature."

addressed by the en banc court was whether or not a city's regulation of the erection of a newsstand on public property implicates the First Amendment. A plurality of five judges thought that the erection and maintenance of a newsstand on public property did not enjoy First Amendment protection at all. *See id.* at 1314-17. However, seven judges disagreed. *See id.* at 1327-28 (Flaum, J., with whom Cudahy, J., joins, concurring) (writing separately to "emphasize my belief that the erection and maintenance of newspaper stands qualifies" as "conduct commonly associated with expression ... [and thus] implicates the First Amendment's protection of expression."); *id.* at 1333-34 (Ripple, J., with whom Cudahy, J., and Rovner, J., join, concurring) (finding "untenable" the plurality's position that the placement of a newsstand does not implicate expressive activity); *id.* at 1335-36 (Cummings, J., with whom Bauer, J., and Fairchild, J., join, dissenting) (concluding that the contention "that Chicago's newsstand ordinance does not implicate the First Amendment at all because it merely regulates conduct ... is insupportable."). Thus, a majority of the judges of the Seventh Circuit concluded that First Amendment concerns *were* implicated by the newsstand regulations, and that the time, place and manner analysis should be employed.

The tables deployed by the plaintiffs here are similar to the newsstand in *Graff,* in that the tables provide a method for displaying expressive materials, and they also enable a single person to display and distribute a larger volume and a greater variety of expressive materials more effectively. Functionally, it would seem to me that the tables in the instant case serve an

almost identical purpose as the newsstand in *Graff.*

I note that the majority relies heavily on Seventh Circuit precedent in reaching its conclusion that tables used to facilitate speech deserve no First Amendment protection whatsoever. *See* Majority at 2653 ("Only the Seventh Circuit has directly held that the erection of a table is not constitutionally protected free speech."). However, the majority ignores the Seventh Circuit's recent en banc *Graff* opinion. Moreover, the two older Seventh Circuit panel opinions upon which the majority relies, *Int. Caucus of Labor Comm. v. City of Chicago,* 816 F.2d 337 (7th Cir.1987) and *Intern. Soc. for Krishna Consc. v. Rochford,* 585 F.2d 263, 271 (7th Cir.1978), do not support the majority's position that the plaintiffs' activity enjoys no First Amendment protection.

Several reasons persuade me that the majority's reading of these two cases is mistaken. First, the relevant discussion in *Rochford* is ambiguous and cryptic,[4] and, as the majority notes, *Rochford* 's precedential value is tainted because the relevant section of the regulation at issue (that dealing with tables) was not even challenged in that case. Second, the majority's reliance upon the subsequent *City of Chicago* case is inappropriate, because that case expressly treated the plaintiffs' conduct, including the erection of tables, as enjoying First Amendment protection. *City of Chicago,* 816 F.2d at 339 ("There has been no contention that plaintiffs' activities are not protected by the First

---

[4]The only issue on appeal in *Rochford* was a vagueness challenge, but the court volunteered a single additional sentence nonetheless: "Because this section does not facially restrict the exercise of guaranteed rights, we do not find it is constitutionally impermissible." *Rochford,* 585 F.2d at 270.

Amendment."). [5]  Finally, even if there had been some implication in *Rochford* or *City of Chicago* that tables used to facilitate speech enjoy no First Amendment protection, such precedent would have been undermined by the subsequent en banc opinion in *Graff,* in which a majority of the judges on the Seventh Circuit concluded that newsstands on public property do enjoy First Amendment protection.

I would hold that the district court was correct to apply the time, place and manner test set forth by the Supreme Court in *Ward v. Rock Against Racism.*  The majority declined to review the district court's conclusions with regard to this test, resting instead on the belief that no such analysis was necessary given the absence of constitutional significance to be found in the plaintiffs' table.  I have registered my disagreement with this analysis above;  but in light of my inability to persuade my brethren, I see no need to address the district court's application of the time, place and manner test.

---

[5]The relevant regulation in *City of Chicago* prohibited the erection of tables or other structures in the public areas of O'Hare airport.  It appears that the panel majority thought it was clear that the restrictions were "[r]easonable time, place and manner restrictions, based on the nature of [the] place" because of the city's "valid concerns about expediting the processing of travelers."  *City of Chicago,* 816 F.2d at 340.