ANDERSON, Circuit Judge,
dissenting:
The majority today holds that the use of a table to facilitate speech enjoys no First Amendment protection at all unless such use is “necessary to the exercise of First Amendment rights.” Majority at 2655. Because I believe that this is not the standard that has evolved through Supreme Court First Amendment jurisprudence, I dissent.
The Supreme Court has not expressly set forth a test for determining the degree to which conduct must be linked to protected speech to be entitled to some level of constitutional protection.[1] The closest the Court has come to articulating such a test is found in City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The city in Plain Dealer passed an ordinance prohibiting the private placement of any structure on public property, and it used that ordinance to deny the publisher of a local newspaper permission to place newsracks on sidewalks. Id. at 753, 108 S.Ct. at 2141-42. The Court indicated that regulation or restriction of conduct implicates the First Amendment when the “conduct [is] commonly associated with expression.” Id. at 759, 108 S.Ct. at 2145.
The majority would limit to their facts the Plain Dealer opinion and similar cases involving newsracks, based on a perceived historical distinction between newsracks and other devices that facilitate speech. However, the Supreme Court has never drawn such a distinction. To the contrary, the Court has held that the First Amendment is implicated in regulations banning newsracks containing commercial publications, see City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), governing the amplification of music, see Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), restricting the use of sound trucks, see Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), and prohibiting the use of loudspeakers, see Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948).
Had the Court adopted the majority’s requirement that such devices be “necessary” to the speech itself, it would not have conducted the “time, place and manner” inquiry that it did in each of the cases cited above. It would simply have held that sound trucks, amplifiers and commercial newsracks are not “necessary” to the expression they broadcast (for surely the same expression could have been made without them), and thus are entitled to no constitutional protection whatsoever. This, however, the Court did not do.[2] *1280 Instead, the Court, consistent with its prior jurisprudence, endeavored to balance the individual right of free expression with the “authority to give consideration, without unfair discrimination, to time, place and manner in relation to other proper uses of the streets.” Cox v. New Hampshire, 312 U.S. 569, 576, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941); see also Plain Dealer, 486 U.S. at 763, 108 S.Ct. at 2147 (“Presumably in the case of an ordinance that completely prohibits a particular manner of expression ... the Court would apply the well-settled time, place and manner test.”).
In my view, the proper threshold question is whether tables, when used to display expressive media such as books and posters, are commonly associated with a protected form of expression. A summary review of eases from Federal courts around the country reveals that tables are frequently used by those seeking to disseminate ideas and distribute literature on sidewalks, in airports, and in areas where people gather. See, e.g., United States v. Kokinda, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (table set up on sidewalk by group soliciting contributions and distributing literature); PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (table set up on plaza of shopping mall by students seeking to solicit signatures for petitions); Hedges v. Wauconda Comm. Unit School Dist. No. 118, 9 F.3d 1295 (7th Cir.1993) (upholding school policy requiring that students distribute religious literature from table); Paulsen v. Gotbaum, 982 F.2d 825 (2nd Cir.1992) (upholding city rule restricting distribution of literature to stationary tables); Northeast Women’s Center, Inc., v. McMonagle, 939 F.2d 57 (3rd Cir.1991) (information table set up by protesters at abortion clinic); Birdwell v. Hazelwood School District, 491 F.2d 490 (8th Cir.1974) (information table set up by military recruiter in hall of high school); One World One Family Now, Inc., v. Nevada, 860 F.Supp. 1457 (D.Nev.1994) (tables set up on public sidewalks by group selling message-bearing t-shirts); One World One Family Now v. City of Key West, 852 F.Supp. 1005 (S.D.Fla.1994) (same); Texas Review Society v. Cunningham, 659 F.Supp. 1239 (W.D.Tex.1987) (tables used by university student organizations distributing literature); International Society for Krishna Consciousness, Inc., v. Rochford, 425 F.Supp. 734 (N.D.Ill.1977) (dispute over regulations governing use of tables by groups soliciting in airport); LeClair v. O’Neil, 307 F.Supp. 621 (D.Mass.1969) (table set up in waiting room at welfare office by welfare advocacy organization).
In fact, the plaintiffs in this case commonly use tables to display and distribute them literature. See International Caucus of Labor Committees v. City of Chicago, 816 F.2d 337 (7th Cir.1987); International Caucus of Labor Committee v. Maryland Dept. of Transportation, 745 F.Supp. 323 (D.Md.1990); International Caucus of Labor Committees v. Dade County, Florida, 724 F.Supp. 917 (S.D.Fla.1989). The evidence presented in this case demonstrates that the plaintiffs used a table in a manner commonly associated with expression. The district court noted that “[t]he tables upon which plaintiffs routinely display several stacks of assorted books, pamphlets, and newspapers enhance plaintiffs’ ability to disseminate literature____” On both of the occasions during which the plaintiffs were forced to remove their table, the district court found that they were distributing literature from the *1281 table, and that books and literature were stacked on it.[3]
Applying the “commonly associated with protected speech” test suggested by the Supreme Court, I would conclude that the plaintiffs’ use of tables to facilitate their speech enjoys some level of First Amendment protection, and that the time, place and manner analysis should be applied. This conclusion finds support in the above cited Supreme Court cases involving the analogous contexts of newsracks, sound amplification devices, and sound trucks. My conclusion also finds strong support in a recent en bane opinion of the Seventh Circuit. The plaintiffs’ tables in this ease are very similar to the newsstands at issue in Graff v. City of Chicago, 9 F.3d 1309 (7th Cir.1993) (en banc). One issue addressed by the en banc court was whether or not a city’s regulation of the erection of a newsstand on public property implicates the First Amendment. A plurality of five judges thought that the erection and maintenance of a newsstand on public property did not enjoy First Amendment protection at all. See id. at 1314-17. However, seven judges disagreed. See id. at 1327 (Flaum, J., with whom Cudahy, J., joins, concurring) (writing separately to “emphasize my belief that the erection and maintenance of newspaper stands qualifies as ‘conduct commonly associated with expression’ [citing Plain Dealer, 486 U.S. at 759, 108 S.Ct. 2145] ... [and thus] implicates the First Amendment’s protection of expression.”); id. at 1333-34 (Ripple, J., with whom Cudahy, J., and Rovner, J., join, concurring) (finding “untenable” the plurality’s position that the placement of a newsstand does not implicate expressive activity); id. at 1336 (Cummings, J., with whom Bauer, J., and Fairchild, J., join, dissenting) (concluding that the contention “that Chicago’s newsstand ordinance does not implicate the First Amendment at all because it merely regulates conduct ... is insupportable.”). Thus, a majority of the judges of the Seventh Circuit concluded that First Amendment concerns were implicated by the newsstand regulations, and that the time, place and manner analysis should be employed.
The tables deployed by the plaintiffs here are similar to the newsstand in Graff, in that the tables provide a method for displaying expressive materials, and they also enable a single person to display and distribute a larger volume and a greater variety of expressive materials more effectively. Functionally, it would seem to me that the tables in the instant case serve an almost identical purpose as the newsstand in Graff.
I note that the majority relies heavily on Seventh Circuit precedent in reaching its conclusion that tables used to facilitate speech deserve no First Amendment protection whatsoever. See Majority at 2653 (“Only the Seventh Circuit has directly held that the erection of a table is not constitutionally protected free speech.”). However, the majority ignores the Seventh Circuit’s recent en banc Graff opinion. Moreover, the two older Seventh Circuit panel opinions upon which the majority relies, Int. Caucus of Labor Comm. v. City of Chicago, 816 F.2d 337 (7th Cir.1987) and Intern. Soc. for Krishna Consc. v. Rochford, 585 F.2d 263, 271 (7th Cir.1978), do not support the majority’s position that the plaintiffs’ activity enjoys no First Amendment protection.
Several reasons persuade me that the majority’s reading of these two cases is mistaken. First, the relevant discussion in Rockford is ambiguous and cryptic,[4] and, as the majority notes, Rockford’s precedential value is tainted because the relevant section of the regulation at issue (that dealing with tables) was not even challenged in that ease. Second, the majority’s reliance upon the subsequent City of Chicago case is inappropriate, because that case expressly treated the plaintiffs’ conduct, including the erection of *1282 tables, as enjoying First Amendment protection. City of Chicago, 816 F.2d at 339 (“There has been no contention that plaintiffs’ activities are not protected by the First Amendment.”).[5] Finally, even if there had been some implication in Rockford or City of Chicago that tables used to facilitate speech enjoy no First Amendment protection, such precedent would have been undermined by the subsequent en banc opinion in Graff, in which a majority of the judges on the Seventh Circuit concluded that newsstands on public property do enjoy First Amendment protection.
I would hold that the district court was correct to apply the time, place and manner test set forth by the Supreme Court in Ward v. Rock Against Racism. The majority declined to review the district court’s conclusions with regard to this test, resting instead on the belief that no such analysis was necessary given the absence of constitutional significance to be found in the plaintiffs’ table. I have registered my disagreement with this analysis above; but in light of my inability to persuade my brethren, I see no need to address the district court’s application of the time, place and manner test.

. See Laurence H. Tribe, American Constitutional Law § 12-7, at 827 (2d ed. 1988) ("The trouble with the distinction between speech and conduct is that it has less determinate content than is sometimes supposed. All communication except perhaps that of the extrasensory variety involves conduct ... Expression and conduct, message and medium, are thus inextricably tied together in all communicative behavior....”)

. It does not stretch the analogy to say that newsracks, loudspeakers and tables similarly enlarge the potential audience for a speaker’s message. Just as a loudspeaker increases the number of people who can hear a spoken message, so too newsracks spread throughout a city increase the number of people who can receive a printed message. In the same way, a table on which literature is placed and to which posters are attached, as here, increases the potential audi *1280 ence for the message when compared with the number of people that could be reached by speaking with each individually. These devices all enhance the delivery of protected speech, and though they are not entitled to the same protections as the speech itself, they are entitled to the protections afforded by the "time, place and manner” test. As the Supreme Court noted in Metromedia, Inc., v. City of San Diego, 453 U.S. 490, 502, 101 S.Ct. 2882, 2889-90, 69 L.Ed.2d 800(1981):
Billboards, then, like other media of communication, combine communicative and non-communicative aspects. As with other media, the government has legitimate interests in controlling the noncommunicative aspects of the medium ... but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government’s regulatory interest with the individual’s right to expression.

. The district court noted that at no time did the plaintiffs' table obstruct the sidewalk or in any way impede the flow of pedestrian traffic. In fact, the court found that, ”[f]rom the evidence it appeared that the objection [of pedestrians] was to persons attending the display tables and approaching pedestrians in an effort to interest them in available literature.”

. The only issue on appeal in Rockford was a vagueness challenge, but the court volunteered a single additional sentence nonetheless: "Because this section does not facially restrict the exercise of guaranteed rights, we do not find it is constitutionally impermissible.” Rockford, 585 F.2d at 270.

. The relevant regulation in City of Chicago prohibited the erection of tables or other structures in the public areas of O’Hare airport. It appears that the panel majority thought it was clear that the restrictions were ”[r]easonable time, place and manner restrictions, based on the nature of [the] place” because of the city's "valid concerns about expediting the processing of travelers." City of Chicago, 816 F.2d at 340.