ROCK AGAINST RACISM, Plaintiff,

v.

Hon. Benjamin R. WARD, in his official capacity as Police Commissioner for the City of New York, et al., Defendants.

No. 85 Civ. 3000 (CSH).

United States District Court,
S.D. New York.

May 1, 1986.

Fosbinder, Schachter, Walker & Winkler, Madison, Wis., Gombiner & Avenia, New York City, for plaintiff; James H. Fosbinder, Madison, Wis., Peter Avenia, New York City, of counsel.

Frederick A.O. Schwartz, Jr., Corp. Counsel, New York City, for defendants; Elizabeth D. Kendrick, Chad A. Vignola, of counsel.

MEMORANDUM OPINION
AND ORDER

HAIGHT, District Judge:

The parties are again before the Court within the context of plaintiff Rock Against Racism's ("RAR") annual concert in Central Park. I say "again" because

this litigation was generated by last year's concert. This year's concert is scheduled for May 4, 1986, at the Naumberg Bandshell between the Mall and Bethesda Terrace. RAR seeks, on First Amendment grounds, an injunction prohibiting defendants from applying to RAR certain guidelines drafted by the Department of Parks and Recreation for use of that locality.

Commissioner Henry J. Stern promulgated those guidelines under date of March 21, 1986. They were the work product of Joseph Killian, program director for that much-used area of the park. Mindful of various organizations' applications to hold events there, Killian contacted them. One of these was RAR. It is not disputed that Killian telephoned RAR representatives on Monday, March 24, to advise them of the issuance of the use guidelines. RAR acknowledges receiving a copy at "the end of March, 1986." Brief at 2. RAR filed this application on April 23. To give defendants some time to confront the constitutional issues, I made the motion returnable on May 1, when oral argument was heard.

The timing does not permit extended analysis or discussion. It also has consequences for which RAR is responsible. This application was unduly delayed. Based on past history, RAR could have had no reasonable expectation that defendants would waive these guidelines on RAR's request. In any event, on April 9, Killian advised RAR's counsel, James Fosbinder, that the guidelines would be enforced. Mr. Fosbinder thereupon left to conduct a trial in Arizona. No arrangements were made to bring the dispute to the Court before April 23. No evidentiary record exists except the opposing affidavits. In these circumstances, RAR is entitled to relief only to the extent that such entitlement appears as a matter of law from the face of the papers.

(1) *The sound system.*

In prior years, including last year, RAR used its own sound system.

The guidelines provide that the Department "is the sole and only provider of sound amplification"; a "user fee of $100 per performance hour, plus a one hour sound check is charged."

This guideline would require RAR to abandon its own system, which it used without complaint by the City last year, and use different equipment whose knobs and dials would be twisted by the hands of strangers—in point of fact, private contractors hired by the City but paid for by RAR. It is recognized that "live musical expression is protected by the first amendment." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 569 (9th Cir.1984). I agree with RAR that, absent significant governmental interest requiring a different result, that protection extends not only the words and songs presented but also the sound which actually emanates from the amplification system. That sound may be substantially affected by the amplification system itself and who controls it. To paraphrase the old song: "The music goes round and round, but it comes out *here.*"

Here there is no significant government interest. RAR acknowledges this year, as it did last year, the constitutional validity of those general park regulations which limit sound. Defendants do not suggest that RAR, using its own equipment, breached those regulations last year. There is no reason to assume it will this year. As a general rule, prospective restraints even of criminal behavior are unconstitutional. *Fernandes v. Limmer*, 663 F.2d 619, 628 (5th Cir.1981), *rehearing denied*, 669 F.2d 729, *cert. denied*, 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982).

(2) *Financial Aspects.*

RAR complains of the increased cost of obtaining this year's permit.

The cost elements are: a $100 fee to process the application; the $100 per hour sound system use charge; a $1,000 cleanup bond; and the cost (as yet undetermined) of obtaining a one-day liability policy in the amount the defendant requires: $1 million/$3 million.

180

The sound system charge disappears because of my holding under Point (1), *supra.*

■ The rule in this circuit is that: "Licensing fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose." *Eastern Connecticut Citizens Action Group v. Powers,* 723 F.2d 1050, 1056 (2d Cir.1983), citing *Fernandes v. Limmer, supra.* At least in a case where the plaintiff user pleads and proves its inability to pay such charges, and gives the defendant property owner sufficient notice of that claim to justify the fee, the defendant is required to submit evidence that the administrative fee charged is equal to the cost incurred or to be incurred by defendant for processing plaintiff's request to use the property. *Id.*

In the case at bar, RAR paid the processing fee last year, pursuant to a settlement approved by the Court. Unlike the plaintiff *Eastern Connecticut Citizens Action Group,* the present plaintiff makes no showing of a present inability to afford the licensing fee, or to furnish the $1,000 cleanup bond, again an amount equal to last year's requirement. RAR's motion papers this year list the $100 license fee as an objectionable requirement, but do not say why. If the argument is that a licensing fee is unconstitutional *per se, Eastern Connecticut Citizens Action Group* is to the contrary. If RAR's argument is that defendants have not offered sufficient proof of the necessity of that particular amount, the answer is that RAR did not make the present application in sufficient time to put defendants on notice of the necessity of such a showing, or indeed to permit it. It was represented by defendants' counsel at argument that the scale of fees, ranging from $50 through $75 through $100, depends upon the estimated number of attendees at the event. One can plausibly assume that larger events require further administrative expenses. In any event, RAR is not in a position on this record to complain of this fee.

For the same reasons, I reach the same conclusion on the "repeat" of last year's $1,000 cleanup bond (all of which, plaintiff's counsel advises, was returned at the end of last year's concert).

■ The requirement for liability insurance is new from last year. Such a condition for public gatherings and exercise of First Amendment freedoms was considered by the Second Circuit in *Eastern Connecticut Citizens Action Group, supra,* and in *Collin v. Smith,* 447 F.Supp. 676 (N.D.Ill. 1978), *aff'd,* 578 F.2d 1197 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978). In both *Collin* and *Eastern Connecticut Citizens Action Group,* the plaintiff user pleaded and proved that it either could not afford or could not obtain the liability insurance required as a condition of use. Both courts concluded that the requirement was unconstitutional as applied. The Seventh Circuit concluded that "we do not need to determine now that no insurance requirement could be imposed in any circumstances," regarding that as "a close question." 578 F.2d at 1208. In the Second Circuit, however, I regard that question as having been answered in the affirmative. Although defendant lost on the facts of the case, Judge Kaufman recognized for the court that "the state has a legitimate interest in protecting itself from liability for injuries associated with the use of its property," 723 F.2d at 1056, and added: "Nor do we suggest that DOT's fee and insurance requirements would not be valid when reasonably applied." *Id.* at 1057.

In appropriate circumstances, the defendant public authority may be put to its proof that the insurance requirement is valid, and the amount requested reasonable. That is the analysis in *Eastern Connecticut Citizens Action Group, supra,* at 1056–57. But again, in the case at bar, RAR has simply failed to proceed in sufficient time and in appropriate form to fairly pose these issues of fact. I interpret RAR's argument to be that the liability insurance requirement is *per se* unconstitutional. Again, *Eastern Connecticut Citizens Action Group* is to the contrary. RAR offers no proof that, although able to afford insurance it could not obtain it, as in *Collin v.*

*Smith, supra,* at 684; or that the insurance, while available, was beyond plaintiff's economic means, as in *Eastern Connecticut Citizens Action Group.* The only argument RAR gave defendants notice of in their motion papers is that since the City does not require individual bicyclists, roller skaters, joggers or frisbee players to insure themselves, it is "unfair" to require the organizers of mass activities to do so. Brief at 6. The argument is frivolous. Defendants did not receive timely and sufficient notice of the arguable constitutional claim, and cannot be criticized for furnishing a more detailed record in opposition to it.

I decline to relieve RAR of the liability insurance requirement.

(3) *Hours of the Event.*

 The remaining dispute relates to the hours of the event. It is not entirely clear, from the briefs as amplified by oral argument, what the boundaries of this dispute are, or indeed if there is one. The remarks of defendants' counsel at argument sounded, at one point, as if defendants were offering the same bloc of time to RAR this year that RAR used last year.

In like vein, RAR's counsel seemed at one point to be requesting the same time as last year. If there is a dispute, it would seem to arise out of the provision in the guidelines that "Festivals may be permitted between 12:00 P.M. and 6:00 P.M." The guidelines go on to provide that: "Evening performances are permitted under certain circumstances. Evening events must be finished by 9:30 P.M." If I understand RAR correctly, it may wish to continue until 7:00 P.M. this year. In view of the fact that the guidelines permit "evening performances" to run until 9:30 P.M., and RAR is asking only for an extension of its First Amendment expression to and including 7:00 P.M., the defendants have failed to demonstrate a constitutionally sufficient basis for cutting RAR off at 6:00 P.M. Accordingly, and assuming RAR meets the other requirements, the permit will extend the permitted usage to 7:00 P.M., if RAR so requests.

In view of the holding that RAR may use its own sound system, the hours for setting the equipment up and taking it down again will be modeled upon the procedures followed without controversy last year.

The foregoing constitutes the Court's findings of fact and conclusions of law. It is SO ORDERED.