982 F.2d 825
 Mitch PAULSEN, Appellant,
v.
Betsy GOTBAUM, in her official capacity as Commissioner of
the New York City Department of Parks and
Recreation; DEPARTMENT OF PARKS AND
RECREATION OF THE CITY OF NEW
YORK, Appellees.
 No. 36, Docket 92-7317.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 4, 1992.
Decided Dec. 29, 1992.
 
 Kevin J. McGill, New York City (Clifton, Budd & DeMaria on the brief), for appellant.
 Elizabeth I. Freedman, New York City (O. Peter Sherwood, Corp. Counsel, and Francis F. Caputo on the brief), for appellees.
 Before: TIMBERS, VAN GRAAFEILAND, and McLAUGHLIN, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Mitch Paulsen appeals from a partial summary judgment entered in the Southern District of New York, John S. Martin, Jr., District Judge, denying a motion for a permanent injunction against certain rules of the Department of Parks and Recreation of the City of New York (Parks Department).
 
 
 2
 On appeal, appellant contends that the rules the Parks Department has established in conjunction with the permit necessary to hold a "special event" in a New York City park violate his First Amendment rights.
 
 
 3
 We reject appellant's claim. We hold that the rules are valid time, place, and manner restrictions. We affirm the partial summary judgment in favor of the Parks Department.
 
 I.
 
 4
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 5
 Appellant is the founder and operator of Mitch Paulsen Outreaches, a New York based Christian evangelical organization. He applied to the Parks Department for a special events permit to hold a musical religious worship event in the bandshell at Forest Park, Queens, on September 23 and September 29, 1990.
 
 
 6
 The Parks Department has promulgated The Rules of the New York City Department of Parks and Recreation (rules) pursuant to § 533(a) of Chapter 21 of the New York City Charter and in compliance with the notice of publication and filing requirements of the New York City Charter, Chapter 45. The Parks Department also has long standing practices which complement the rules. The rules, published by the Parks Department in a Rules Handbook, require that one who wishes to stage a "special event", which includes any "contest, exhibit, public entertainment, parade, parade review, athletic contest, dramatic reading, storytelling, poetry reading or picnic," or "any public meeting or assembly ... ceremony ... speech ... address or oration when more than twenty (20) persons may reasonably be expected to be in attendance" in the parks is required to obtain a permit. Rules, Art. IV, § 25(a) & (b). The permit application form sets forth additional requirements for an application fee, the posting of a clean-up bond if the applicant wants to distribute pamphlets (which is refunded if not used), and, at the Commissioner's discretion, liability insurance.
 
 
 7
 The Commissioner of the Parks Department may deny a permit only upon limited grounds. A permit may be denied only if: (1) the location is not suitable because of environmental conditions or landscaping concerns; (2) the location is a specialized area such as a pool, a zoo, or a skating rink, in which the event, because of its nature or duration, cannot be accommodated reasonably; (3) the date and time have been allotted previously; or (4) within the preceding four years the applicant has been granted a permit and knowingly has violated a material term or condition of the permit, or of any other law, ordinance, statute or regulation regulating the use of parks.
 
 
 8
 A permit application should be filed at least twenty-one days before the requested date of the event. The Parks Department must notify the applicant of its decision within thirty days of the event, if the application was filed more than sixty days before the event. If the application was filed less than sixty days before the requested date, the applicant must be notified as soon as practically possible. If the Parks Department denies a permit, the applicant must be notified of the ground for denial.
 
 
 9
 If an applicant obtains a permit, there are other rules governing the conduct of the special event. These rules include prohibitions against solicitations and non-stationary leafletting, and a requirement of a clean-up bond. There also is a legend on the permit which requires specific approval by the Commissioner before the permittee may distribute pamphlets, solicit funds, or make any speech.
 
 
 10
 On August 8, 1990, appellant applied for a special events permit to stage a musical religious worship event for his organization at Forest Park, Queens. He expected between 100 and 200 people to attend the event on September 22, 1990, with a raindate of September 23, 1990. He paid the $25 application fee. He refused, however, to post a clean-up bond. The Parks Department issued to him a permit for this date (with the raindate), which explicitly prohibited leafletting (because he had not posted a clean-up bond) and also prohibited soliciting without permission from the Parks Department.
 
 
 11
 When appellant arrived at the bandshell on the scheduled date, he discovered that another group was using the bandshell. This occurred because of an administrative error. Indeed, the other group had received a permit to use the bandshell before appellant received his. The Parks Department voided appellant's permit.
 
 
 12
 Appellant commenced this action, alleging violations of his First and Fourteenth Amendment rights arising from the voidance of his permit because of the scheduling conflict. After a hearing, the Parks Department issued appellant a second permit for October 13, 1990. Pursuant to a stipulation, the Department waived the clean-up bond and permitted appellant to solicit donations from a stationary table and actively to distribute pamphlets. The event took place without incident.
 
 
 13
 In February 1991, Paulsen applied for a third permit for dates during the summer of 1991 at the Prospect Park bandshell in Brooklyn. He was told that all of the dates he requested previously had been booked, and that his application and filing fee were being returned to him. In April 1991, appellant went to the Brooklyn office of the Parks Department to pick up his rejected application and fee. He was told that they already had been mailed to him. While at the office, he discovered that one of the requested dates in fact was available. Appellant was told, however, that he would have to file another application and submit another fee since the last ones already had been returned to him. Appellant then brought on by order to show cause a motion in the instant action seeking injunctive relief against the Parks Department for refusal to grant him a permit. He claimed that the Parks Department had failed to process his application in a timely manner and maintained an unconstitutional permitting scheme.
 
 
 14
 Before a hearing was held, appellant refiled his application and resubmitted the fee. The Parks Department granted him the requested permit. Since the permit had been granted, a hearing was not held. In July 1991, appellant amended his complaint in the instant action to include the claims that were set forth in his last order to show cause, alleging that the requirement of the clean-up bond for the distribution of literature and the requirement that literature be distributed from a stationary table constituted an impermissible and unconstitutional burden on free speech.
 
 
 15
 The Parks Department moved for summary judgment, claiming that the rules governing special events constituted a reasonable time, place, and manner restraint on First Amendment activity, and that the rules, as applied to appellant in connection with his September 23, 1990 permit, did not violate his constitutional rights. Appellant cross-moved for summary judgment.
 
 
 16
 On February 25, 1992, the court entered an injunction permanently enjoining the Parks Department from enforcing the rules which require the Commissioner's approval for soliciting or leafletting at a special event, and from enforcing the discretionary requirement of liability insurance for some special events. The court granted partial summary judgment in favor of the Parks Department. It denied appellant's claim that the distribution rules, the solicitation rules, the application deadlines, and the fees should be enjoined, holding that they were all reasonable restraints and were constitutional. Appellant appeals from the partial summary judgment. The Parks Department does not appeal from the injunction against it.
 
 II.
 
 17
 (A) Summary Judgment was Properly Granted
 
 
 18
 Summary judgment is appropriate in cases where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the instant case, neither party disputes the existence or application of the rules being challenged. As for the application of the law, we use the same standard as applied by the district court and review the record de novo. Viacom Intern. Inc. v. Icahn, 946 F.2d 998, 1000 (2 Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992); Bryant v. Maffucci, 923 F.2d 979, 982 (2 Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).
 
 
 19
 (B) Constitutionality of the Distribution and Solicitation Rules
 
 
 20
 As recently as last term, the Supreme Court reiterated its position on the regulation of speech in a public forum. The Court held that:
 
 
 21
 "[E]xpressive activity, even in a quintessential public forum, may interfere with other important activities for which the property is used. Accordingly, the Court has held that the government may regulate the time, place, and manner of expressive activity, so long as such restrictions are content-neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication."
 
 
 22
 Burson v. Freeman, --- U.S. ----, ----, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5 (1992) (citations omitted) (emphasis added). As the district court did, we must apply the three-prong test set forth by the Supreme Court to determine if the Parks Department's rules are constitutional. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984).
 
 
 23
 Appellant claims that the district court erred in holding that the rules here involved satisfied this three-prong test, because he asserts that the court "failed to apply the case law which holds that the peaceful distribution and sale of religious literature--as opposed to purely commercial solicitation--has been accorded the widest constitutional protection." While that may be true, the Supreme Court also has held that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Soc. for Krishna Consciousness, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). Even speech given the widest protection by the Constitution may be subject to reasonable time, place, and manner restrictions. Id. It therefore is necessary, contrary to appellant's claim, to apply the three-prong test to the facts at hand to determine whether these restrictions are reasonable.
 
 
 24
 We first must determine whether the rules are content-neutral. Appellant does not challenge this. The rules cover all types of leaflets and solicitation by any organization, regardless of the contents of the leaflets or the type of organization. We hold that they meet the first prong of the test.
 
 
 25
 Appellant does not urgently press his disagreement with the district court's determination of the second prong of the test--that the rules were "narrowly tailored", effecting a "significant governmental interest."
 
 
 26
 With respect to this claim, appellant relies on cases which he asserts "reflect a strong policy against speech restrictions which are motivated by listener reaction." Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (unconstitutional to criminalize desecration of the flag); United States v. Eichman, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (same); Boos v. Barry, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (unconstitutional to ban signs which disparage foreign governments). These cases are easily distinguishable in that Texas v. Johnson and Eichman involved complete bans of a certain type of speech, and Boos involved content-based regulations. The instant case does not involve a total ban on speech; the rules are indisputably content-neutral. Appellant was permitted to both solicit and leaflet at the special events even though he was limited to a stationary area. Further, appellant was free to solicit and leaflet in any other area of the park, aside from the location of the special event.
 
 
 27
 While a rule of this kind must be narrowly tailored to serve a significant governmental interest, it need not be the least restrictive or least intrusive means of serving that interest. Rather, it simply must promote a substantial governmental interest that would be achieved less effectively without the rule. Ward, supra, 491 U.S. at 798, 109 S.Ct. at 2757.
 
 
 28
 The rules here involved are narrowly tailored. They restrict soliciting or leafletting only during special events, when the larger crowds may cause congestion and create more litter. The rules here serve the interest of avoiding an intrusion upon the people who attend the special events and of avoiding litter during the special events.
 
 
 29
 Special events in New York City parks do draw large crowds which increase litter in the parks. In this respect, the instant case is analogous to Heffron, supra, 452 U.S. 640, 101 S.Ct. 2559. There, the Supreme Court upheld a rule requiring groups at a state fair to solicit or distribute literature from a booth, so as to control the crowds and avoid disorder. The Court stated that the governmental interest involved "must be assessed in light of the characteristic nature and function of the particular forum involved." Id. at 651, 101 S.Ct. at 2565. The Court also observed the similarities between the fair and a public street in that both have been used historically for assembly and communication of ideas. The differences, however, were significant. The fair is a temporary event which attracts many visitors for a short period. In this context, the flow of the crowd and the safety to the public become significant government interests. It is a valid governmental interest to protect the safety and even the convenience of persons in public forums. Id. at 650-51, 101 S.Ct. at 2565-66.
 
 
 30
 Appellant tries to distinguish Heffron from the instant case, pointing out the differences between a state fair and the smaller scale event that appellant had planned. He fails to appreciate, however, that his event is only one of many held in the park. Other special events in the parks of New York City include concerts by Pavarotti and Paul Simon, the New York City Marathon, and the Billy Graham Crusade, all of which attract thousands of people. The effect of the rules must be viewed in the light of all these events. As the Supreme Court stated in Clark, supra, "the validity of [the] regulation need not be judged solely by reference to the demonstration at hand." 468 U.S. at 296-97, 104 S.Ct. at 3070-71. If the rule is narrowly tailored for the events taken as a whole, it is irrelevant that this appellant's event was smaller or litter free.
 
 
 31
 Appellant asserts that the Parks Department's interest in preserving the quiet enjoyment of people who attend these events is unfounded. He says that spectators have no right of quiet enjoyment when they attend a special event which has an audience of more than twenty people. He fails to realize that the parks accommodate events such as Earth Day in Manhattan's Central Park which draw crowds in the hundreds of thousands. Soliciting or leafletting in such crowds is harassment, may be a threat to public safety, and may create tremendous litter.
 
 
 32
 The Supreme Court has given deference to parks services in determining what steps are needed to keep parks free from litter. Due to the substantial governmental interest in conserving parks, the parks services and not the judiciary should judge how the conservation should be obtained. Clark, supra, 468 U.S. at 299, 104 S.Ct. at 3072. Applying this standard, we hold that the instant rules are narrowly tailored and serve a significant governmental interest.
 
 
 33
 The final prong of the test requires that there be ample alternative channels of communication available. Appellant relies on cases in which the Supreme Court struck down ordinances which banned the distribution of leaflets and reiterated the importance of the ability to disseminate one's views. Jamison v. Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Lovell v. Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938). In the instant case, however, the rules do not ban soliciting or leafletting. Rather, they simply restrict it to a certain area. This restriction is applicable only during special events. Further, as the Parks Department points out, appellant is not limited in the quantity or content of what he distributes. Applying the Supreme Court's test for rules on the time, place, and manner of speech, we hold that those here involved are constitutional and valid.
 
 
 34
 (C) Constitutionality of the Clean-Up Bond Requirement
 
 
 35
 Finally, appellant asserts that the requirement that an applicant for a special event permit post a clean-up bond in order to distribute leaflets is a violation of the First Amendment because it cannot be waived in the event of indigence. While there may be no specific guidelines for waiving the requirement, the Parks Department does review waiver requests on a case by case basis. That is stated explicitly on the permit application. In Ward, the district court upheld an identical provision because the bond was limited to the actual cost of the clean up, the unused portion was returned, and the plaintiff did not claim indigence. The same is true in the instant case. Based on these facts, we hold that this requirement is not a burden. We uphold it. Rock Against Racism v. Ward, 636 F.Supp. 178, 180 (S.D.N.Y.1986).
 
 III.
 To summarize:
 
 36
 We hold that the district court properly held that the rules requiring soliciting and leafletting be limited to a stationary area meet the Ward test for regulating the time, place, and manner of speech. The clean-up bond requirement also is constitutionally valid.
 
 
 37
 Affirmed.