**Frank COLACURCIO, Jr., et al., Plaintiffs,**

v.

**CITY OF KENT, Defendant.**

**No. C95–1176Z.**

United States District Court, W.D. Washington.

Nov. 1, 1996.

Gilbert Henry Levy, Seattle, WA, for Plaintiffs.

William P. Schoel, Jayne L. Freeman and Keating, Bucklin & McCormack, Seattle, WA, Roger A. Lubovich, City Attorney, Kent, WA, for Defendant.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on the City of Kent's motion for summary judgment (docket no. 20). The Court heard oral argument on the motion on August 30, 1996, and subsequently requested supplemental briefing on certain issues.[1] The

---

1. By Minute Order entered September 19, 1996, the Court directed the parties to file supplemental briefs on the following issues: (1) whether

table dancing itself is a "uniquely valuable or important mode of communication" entitled to First Amendment protection (*see Los Angeles v.*

Court, having considered the parties' arguments and all papers filed in support of and in opposition to the defendant's motion, including the parties' supplemental memoranda, hereby GRANTS defendant's motion for summary judgment and DISMISSES plaintiffs' federal law claims with prejudice. The Court dismisses plaintiffs' state law claims without prejudice.

### Background

Plaintiffs Frank Colacurcio, Jr., David Ebert, and Steve Fueston, doing business as DDF & S Investment Company, desire to open a nonalcoholic adult nightclub in the City of Kent which will feature erotic entertainment, including nude dancing on stage and table dancing. The plaintiffs have located a site for their business in the City of Kent and applied for a building permit. Pursuant to a settlement agreement between the plaintiffs and the City of Kent in a case challenging the City's zoning laws, the City agreed to treat the plaintiffs' business as a lawfully established non-conforming use under the City of Kent adult use zoning laws once the building permit was issued.

On March 7, 1995, the Kent City Council adopted Ordinance 3214, which sets new standards for the licensing and operation of adult uses in the City of Kent. On April 18, 1996, that ordinance was amended by Ordinance 3221, in an effort to conform to the King County Superior Court's ruling on a similar ordinance in Bellevue. See Ino Ino, Inc. v. City of Bellevue, King County Cause No. 95–2–02025–9. Adult Entertainment Ordinance 3221, which has been codified as Kent City Code § 5.10.010 et seq., provides in part:

> The portion of the exotic dance studio premises in which dancing and adult entertainment by an entertainer is performed shall be a stage or platform at least twenty-four (24) inches in elevation above the level of the patron seating areas. [KCC 5.10.110(A)].

Taxpayers for Vincent, 466 U.S. 789, 812, 104 S.Ct. 2118, 2132–33, 80 L.Ed.2d 772 (1984)), such that the regulation of table dancing, as opposed to erotic dancing as a whole, is subject to the "narrow tailoring" test as set forth in Ward v. Rock Against Racism, 491 U.S. 781, 798–99, 109 S.Ct. 2746, 2757–58, 105 L.Ed.2d 661

> All dancing and adult entertainment by an entertainer shall occur on the entertainment performance areas intended for that purpose described in section 5.10.110(A). [KCC 5.10.120(A)(2)].

> *No dancing or adult entertainment by an entertainer shall occur closer than ten (10) feet to any patron.* [KCC 5.10.120(A)(3)] (emphasis added).

Because the nightclub the plaintiffs intend to open in Kent will feature nude dancing and erotic entertainment, it is subject to the requirements of the ordinance.

Soon after the City adopted the ordinance, the plaintiffs brought this action for declaratory relief and damages pursuant to 42 U.S.C. § 1983. Plaintiffs challenge the constitutionality of the ordinance's "10 foot rule," arguing that it effectively eliminates "table dancing," which they contend is a unique medium of expression protected by the First Amendment. Table dancing, the plaintiffs contend, is the primary source of income for erotic dancers, and its elimination as a form of entertainment makes it economically unfeasible for dancers to dance in, and adult entertainment businesses to operate in, the City of Kent. Plaintiffs argue that "[i]n the context of erotic dancing, moving the dancer ten feet away from the patron actually effects (sic) and substantially alters and degrades the erotic message being conveyed.... A lesser set back between patrons and entertainers has proven to be sufficient to cure the problems of illegal sexual contact." Plaintiffs' Opposition Memo at 8 (docket no. 27). Plaintiffs also contend that the ordinance is an unconstitutional time, place, and manner regulation because the record shows that the Kent City Council's predominant purpose in passing the ordinance was to suppress protected speech, not to control the secondary effects resulting from that speech.

(1989), (2) whether the "10 foot" rule in the ordinance imposes any non-economic burdens on the dancer's ability to communicate effectively, and (3) whether the "10 foot" rule in the ordinance leaves open ample alternative avenues of communication.

*Discussion*

### I. *Summary Judgment Standard*

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing an absence of genuine factual issues. *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). The party opposing summary judgment may not rest upon the mere allegations or denials of his or her pleading, but must set forth specific facts demonstrating the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court should assume the truth of evidence proffered by the party opposing summary judgment and draw all reasonable inferences in a light most favorable to the nonmoving party. *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.1991). The Court need not make findings of fact; rather the Court need only perform a threshold inquiry to determine whether genuine material issues exist that can only be resolved by a trier of fact. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

In this case, the parties do not dispute the existence or application of the ordinance being challenged, and there are no genuine issues of material fact relevant to the constitutional analysis. Therefore, it is appropriate for the Court to determine on summary judgment whether the ordinance is constitutional. *Cf. Paulsen v. Gotbaum*, 982 F.2d 825, 828 (2nd Cir.1992).

### II. *The Ordinance is a Permissible Time, Place and Manner Regulation under the First Amendment*

Erotic dancing is a protected expression under the First Amendment. *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1058 (9th Cir.1986); *BSA, Inc. v. King County*, 804 F.2d 1104 (9th Cir.1986). Similarly, nude dancing "is expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 560, 111 S.Ct. 2456, 2457, 115 L.Ed.2d 504 (1991). Although erotic dancing, nude or otherwise, is expression protected by the First Amendment, "it 'does not guarantee the right to [engage in the protected expression] at all times and places or in any manner that may be desired.'" *Kev*, 793 F.2d at 1058 (quoting *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981)). Thus, a city, "when acting to further legitimate ends of the community, may impose incidental burdens" on this form of protected expression. *Kev*, 793 F.2d at 1058.

In *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the Supreme Court held that municipalities may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are (1) justified without reference to the content of the regulated speech, (2) narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information. *See also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986) ("[S]o called 'content neutral' time, place and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.").

### A. *Kent's Ordinance Is Content–Neutral Time, Place and Manner Restriction*

■ The Kent ordinance is a time, place and manner regulation because it does not ban erotic dancing altogether, but rather restricts such dancing to a location no closer than ten feet to any patron. *Renton*, 475 U.S. at 46, 106 S.Ct. at 928. *See also Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1332 (9th Cir.1987) (regulation was time, place, and manner regulation because it did not ban adult theaters altogether).

In determining whether the ordinance is content neutral, the principal inquiry "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791–93, 109 S.Ct. at 2753–55 (citing

*Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 295, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984)). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* (citing *Renton,* 475 U.S. at 47–48, 106 S.Ct. at 928–29). "Regulations that apply to a particular category of speech because the regulatory targets happen to be associated with that type of speech are properly characterized as content-neutral, as long as the regulations are justified without reference to the content of that speech." *Bamon Corp. v. City of Dayton,* 923 F.2d 470, 473 (6th Cir.1991) (citing *Boos v. Barry,* 485 U.S. 312, 320, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988)).

The content-neutrality requirement is met if the involved ordinance is "aimed to control secondary effects resulting from the protected expression" rather than at inhibiting the protected expression itself. *Tollis,* 827 F.2d at 1332. Thus, the court's initial determination in any action challenging the content-neutrality of an ordinance is "whether the 'predominate (sic) purpose in enacting the ordinance is suppression of first amendment rights' or, instead, the amelioration of deleterious secondary effects." *Id.* (quoting *Walnut Properties, Inc. v. City of Whittier,* 808 F.2d 1331, 1334 (9th Cir.1986)).

> If the ordinance is predominantly aimed at the suppression of first amendment rights, then it is content-based and presumptively violates the first amendment. *Renton,* 475 U.S. at 45–47, 106 S.Ct. at 928. If, on the other hand, the predominant purpose of the ordinance is the amelioration of secondary effects, then the ordinance is content-neutral and the court must then determine whether the ordinance passes constitutional muster as a content-neutral time, place, and manner regulation.

*Id.* A finding that the restriction of first amendment speech was "a motivating factor" in enacting the ordinance is not of itself sufficient to hold the regulation presumptively invalid. *Renton,* 475 U.S. at 47–49, 106 S.Ct. at 929.

> "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive...."
>
> "... What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork."

*Id.* at 48, 106 S.Ct. at 929 (quoting *United States v. O'Brien,* 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968)).

Plaintiffs contend that the City of Kent's predominant intent in passing the Ordinance was to ban adult entertainment in the City of Kent, rather than to limit the secondary effects of such entertainment. Plaintiffs' contention is based on statements made by the mayor, city officials, and others; a pattern of the City adopting Ordinances as exotic dance studios were being proposed in the City; and a history of imposing the most restrictive regulations possible on adult entertainment businesses.[2]

The defendant counters that in determining the predominant intent of the City in enacting the ordinance, the Court need not look any further than the language of the ordinance itself. The City contends that where the ordinance *by its terms* specifies that its purpose and intent is to eliminate deleterious secondary effects, it is content-neutral.

While it is true that most courts give great weight to the language of the ordinance and its stated purpose, at least one court has noted that "[t]his language [alone] might not save a statute that was formulated without

---

2. In support of their argument, plaintiffs submit the Declaration of R. Bruce McLaughlin, a land use planning and local government consultant, who concludes based on a review of the record that the City's goal in enacting the ordinance "was other than legitimate." McLaughlin Decl. at 23. McLaughlin's opinions do not constitute expert testimony under Fed.R.Evid. 702. McLaughlin has no specialized knowledge, skill, training, education, or experience that would qualify him to offer an opinion on the purpose of the ordinance. Moreover, his opinion is based on speculation and conjecture.

specific attention to specific secondary effects." *Lakeland Lounge of Jackson, Inc. v. City of Jackson,* 973 F.2d 1255, 1259 (5th Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993). The proper inquiry is to consider all "objective indicators [of intent] as taken from the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment of the statute, the stated purpose, and the record of proceedings." *City of Las Vegas v. Foley,* 747 F.2d 1294, 1297 (9th Cir.1984).

The Kent ordinance provides that its purpose and intent is:

> ... to alleviate undesirable social problems that accompany adult entertainment businesses, and to enact content neutral regulations which address the secondary effects of adult entertainment businesses as well as health problems associated with such business, not to curtail the First Amendment expression, namely, dancing or entertainment.

KCC 5.10.020. While this language alone is insufficient to establish that the City's predominate intent was curbing secondary effects, the record reflects that the City had previously studied the secondary effects of adult entertainment and relied upon the results of those studies in formulating the ordinance. The City has concluded based on a review of its studies that regulation of the adult entertainment industry is necessary to prevent the significant criminal activity that has historically and regularly occurred in these establishments, including prostitution, narcotics and liquor law violations, and breaches of the peace. *See* Lubovich Affid. and attachments, Covey Affid.; KCC § 5.10.010(2). The City has also considered the potential adverse impact on property values resulting from these activities, and has taken steps to prevent to the extent possible a decline in property values. Lubovich Affid. and attachments.

Plaintiffs contend that the City's true, but hidden, intent in enacting the ordinance was different from what the ordinance states. They cite numerous statements by city officials and others which allegedly show that the City's predominant purpose in enacting the ordinance was suppression of protected speech. Plaintiffs cite, for example, the following statement by City Attorney Roger Lubovich made on March 27, 1995, at a Planning Commission meeting:

> "Since we cannot zone these type[s] of businesses out the City, the licensing was looked at that was in place for this type of facility. . . . As indicated, these uses cannot be prohibited, but they can be regulated."

Plaintiffs' Opposition Memorandum (docket no. 27) at 6. Plaintiffs also cite a statement from the Chairman of the Planning Committee, made at a meeting on April 10, 1995:

> "With all the regulations we have adopted and stuff, I'm not too concerned that someone's going to come and try to open something up. *Because we've made it little bit difficult for them to make money in the traditional way they make money.*"

*Id.* (emphasis added).

Many of the statements cited by the plaintiffs reflect personal opinion or were in response to statements by constituents that they "don't want nude dancing in Kent." *See* McLaughlin Decl. at ¶ 27. *See also id.* at ¶ 32 ("It is my sincere hope that the stiff regulations that City Council has accepted regarding adult entertainment will cause the businessman to lose interest in developing here."); ¶ 33 (". . . We've got one in the neighborhood, whether we like it or not. Hopefully he won't pick up his permit though."); ¶ 36 ("[if this ordinance holds up], nobody's going to want to come to this city."). Such statements regarding individual motivation and viewpoint, some of which were made by individuals who were not on the city council and therefore had no ability to enact the ordinance, are precisely the types of statements that the Supreme Court held in *Renton* would not support a finding that the purpose of the regulation was suppression of protected speech. *See also Ambassador Books & Video v. City of Little Rock,* 20 F.3d 858, 862 (8th Cir.) (a handwritten statement by the city attorney that he "want[ed] to shut these places down!" somehow "[fell] far short of what would suffice to justify disregarding the plain and clear statement of the ordi-

nance's purpose."), *cert. denied,* —— U.S. ——, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994).

Plaintiffs contend that the evidence of improper motive that they have submitted at a minimum creates a genuine issue of material fact on the issue of predominant intent, thereby precluding summary judgment on the question of content-neutrality. The Court concludes, however, that summary judgment on the issue of content-neutrality is appropriate here because the evidence plaintiffs rely upon is insufficient as a matter of law to establish improper intent.

"[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute" on the ground that "a punitive purpose in fact lay behind the statute." *Flemming,* 363 U.S. at 617, 80 S.Ct. at 1376. The evidence submitted by the plaintiffs here demonstrates only that certain City officials and others made negative statements about the prospects of having adult entertainment establishments in the City. These personal reflections and observations are insufficient to justify disregarding the plain and clear statement of the ordinance's purpose and the balance of the record. *Renton,* 475 U.S. at 47–48, 106 S.Ct. at 928–29. As the Supreme Court has cautioned, "[j]udicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960).

The Court concludes that the plaintiffs' evidence of individual motivation and viewpoint fails to raise a genuine issue of material fact on the question of predominant intent. The Court finds that the predominant intent of the City in enacting the ordinance was to prevent secondary effects, and thus the ordinance is content-neutral.

B. *Kent's Ordinance Is Narrowly Tailored to Serve a Substantial Governmental Interest, and Leaves Open Alternative Avenues of Expression*

"Curtailing public sexual contact and sexual criminal offenses represents a significant state interest." *BSA, Inc.,* 804 F.2d at 1111. Thus, ordinances regulating the distance between performers and patrons in adult entertainment establishments serve a substantial governmental purpose. *See Kev, Inc.,* 793 F.2d at 1061; *BSA, Inc.,* 804 F.2d at 1111. The plaintiffs do not dispute the City of Kent's substantial interest in curtailing sexual criminal offenses. Plaintiffs do contend, however, that the Ordinance is not narrowly tailored and unreasonably limits alternative avenues of communication.

In *Ward,* the Supreme Court held that the requirement of narrow tailoring is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." 491 U.S. at 798, 109 S.Ct. at 2758 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906–07, 86 L.Ed.2d 536 (1985)). *Ward* expressly rejected the argument that the government must choose the "least restrictive means" or the "least restrictive alternative" in order to satisfy the narrow tailoring requirement. *Id.* 491 U.S. at 798–99, 109 S.Ct. at 2757–58 ("Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so."). The Court explained that provided "the means chosen are not substantially broader than necessary to achieve the government's interest, [ ] the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. at 2758. Thus, restrictions on time, place or manner of protected speech are not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." *Id.* at 797, 109 S.Ct. at 2757 (quoting *Albertini,* 472 U.S. at 689, 105 S.Ct. at 2906–07).

"Table dancing" is the performance of an erotic dance for one particular customer. Plaintiffs argue that table dancing is a unique form of expression that cannot be communicated if minimum distance requirements are imposed. According to plaintiffs, table dancing uses "not just vision but multi-

sensory perception to communicate its message through the sounds, smells and movements of the dancer within the [customer's] intimate perimeter." Plaintiffs' Supplemental Brief at 6. Plaintiffs emphasize in particular the importance of "scents," noting that "[t]he human body may produce some of the most powerful olfactory stimulants of all." *Id.* at 7. Because smell and intimacy are so important to the table dancing experience, plaintiffs argue, close physical distance between the dancer and the patron is essential.

■ Plaintiffs contend that the erotic dancing permitted by the ordinance is significantly less effective than table dancing in conveying the speaker's erotic message. They contend further that, based on the tipping practices of the nightclub's patrons, it is clear that customers do not view other erotic dancing, nude or otherwise, as an adequate substitute for table dancing. In short, customers tip better for table dancing. The restrictions on table dancing, they argue, will have a negative economic impact on adult nightclubs in Kent, and will make Kent a less attractive venue for this type of entertainment.[3] This, they argue, constitutes an impermissible suppression of protected speech.

As to the economic impact of the ordinance on the plaintiffs, the Ninth Circuit has held that "in the absence of any absolute bar to the market, ... it is irrelevant whether '[a regulation] will result in lost profits, higher overhead costs, or even prove to be commercially unfeasible for an adult business.'" *Spokane Arcade, Inc. v. City of Spokane,* 75 F.3d 663, 666 (9th Cir.1996) (quoting *Topanga Press Inc. v. City of Los Angeles,* 989 F.2d 1524, 1531 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994)). The ordinance promulgated by the City in this case does not "deny [plaintiffs] the opportunity to operate its establishments, but merely (or rather, allegedly) increase[s] the costs of doing so." *Spokane Arcade* at 666. This type of injury "should not inform First Amendment analysis." *Id.* Thus, "even if the costs of compliance were so great that [plaintiffs] would be

forced out of business, the ordinance[ ] do[es] not pose any intrinsic limitation on the operation of the [nightclubs]." *Id.* at 667.

As to the whether the adverse impact of the ordinance on table dancing violates the First Amendment, the Court concludes it does not. Plaintiffs' argument hinges on the proposition that table dancing is so unique that it is entitled to its own separate constitutional analysis. As the Supreme Court stated in *Barnes,* however, "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Barnes,* 501 U.S. at 570, 111 S.Ct. at 2462–63. The essential difference between table dancing and stage dancing is, in plaintiffs' own words, "close physical proximity." Thus, plaintiffs' argument, stripped of all its verbiage, is that the customer's experience is more intense, more personal, more erotic if the dancer is close. This is undoubtedly true, but the same could be said of stage dancing and other erotic dancing as a whole. Undoubtedly, the experience of the nightclub patron is significantly enhanced if he or she can be closer to the nude dancer on stage. The patron can see and hear the dancer more clearly, and has a better opportunity to smell the "breath, perfume and the scent of the body." Plaintiffs' Supplemental Brief at 7. But there is nothing in constitutional jurisprudence to suggest that patrons are entitled under the First Amendment to the maximum erotic experience possible. The government is allowed to impose time, place, and manner restrictions on erotic expression, provided the regulation does not burden substantially more speech than necessary to further the government's legitimate interests. *Ward,* 491 U.S. at 799, 109 S.Ct. at 2758.

The Court accepts as true for purposes of this motion that many customers prefer to be close to the dancers. No doubt many would like to touch the dancers. But close proximity, while more desirable, also enhances the risk of illegal sexual contact, and thus courts have consistently upheld attempts by cities to

---

**3.** In support of this argument, plaintiffs submit evidence showing that similar ordinances in other cities have had a negative economic impact on

adult nightclubs in those cities. *See* Bern Decl. (docket no. 33); Fueston Decl. (docket no. 28).

minimize these risks by imposing distance requirements on erotic dancing. *See, e.g., Kev, Inc. v. Kitsap County,* 793 F.2d 1053 (9th Cir.1986); *BSA, Inc. v. King County,* 804 F.2d 1104 (9th Cir.1986). Moreover, the customers' preferences are not the proper focus of the constitutional inquiry. As instructed by the Supreme Court, the crucial question is whether the distance requirement "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 798, 109 S.Ct. at 2758.

Plaintiffs argue that the distance requirement is not narrowly tailored because there are less restrictive means of achieving the same result. Plaintiffs argue, for example, that a "no touch" ordinance or one-foot setback would achieve the same result in a less burdensome manner. But the Supreme Court has flatly rejected the notion that time, place, and manner restrictions violate the First Amendment "simply because there is some imaginable alternative that might be less burdensome on speech." *Albertini,* 472 U.S. at 689, 105 S.Ct. at 2906. " 'The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." *Ward,* 491 U.S. at 800, 109 S.Ct. at 2758 (quoting *Albertini,* 472 U.S. at 689, 105 S.Ct. at 2906–07).

The Court is satisfied that the City has a substantial interest in reducing the risk of sexual contact and illegal touching between dancers and their patrons. The Court is also satisfied that the reasonable distance requirement effectively serves that interest.

The remaining question is whether the ordinance burdens "*substantially* more speech than necessary to further the government's interest." *Ward,* 491 U.S. at 799, 109 S.Ct.

at 2758 (emphasis added). The plaintiffs' argument that it does is again premised on their belief that there are less restrictive means to achieve the government's goal. That argument must be rejected in light of *Ward.* Moreover, the argument that a ten-foot distance requirement between dancer and patron burdens substantially more speech than necessary is essentially foreclosed by *Kev.* As the Ninth Circuit stated in *Kev:*

> While the dancers' erotic message might be slightly less effective from ten feet, the ability to engage in protected expression is not significantly impaired. Erotic dancers still have reasonable access to their market.

793 F.2d at 1061.[4]

Here, the ordinance does not prevent the dancers from performing their erotic dance, or limit the manner in which the dancers may express themselves. The ordinance merely requires that the dancer perform the dance at a certain distance from the customer. Nor does the ordinance bar the customer from receiving the erotic message being conveyed. There is no suggestion that, at a distance of ten feet, the customer is unable to see the performance, appreciate its meaning, or satisfy his or her appetite for sexually explicit dance. The ordinance merely diminishes to a limited degree the effectiveness of the erotic message conveyed by the dance; it "does not impair the dancer's ability to display her art." *Kev,* 793 F.2d at 1061 n. 12. As a result, the ordinance does not burden substantially more speech than necessary, and thus is "narrowly tailored" within the meaning of *Ward.* Based on the same reasoning, the Court finds that the ordinance reasonably offers alternative avenues for expression through erotic dance, and thus is a valid time, place, and manner restriction.

The plaintiffs also argue that the ordinance violates the First Amendment because it is

---

**4.** The Court notes that *Kev* was decided before he Supreme Court in *Ward* clarified that content-neutral time, place, and manner restrictions need not be the least restrictive or least intrusive means of achieving the government's goals. The Court did recognize, however, the Supreme Court's holding in *Albertini* that the requirement that an "incidental burden on speech [be] no

greater than essential" is met where "the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Kev,* 793 F.2d at 1059 n. 3. This is the test later adopted by the Supreme Court in *Ward.* Under this test, the *Kev* court found the ten-foot distance requirement to be constitutional.

overbroad. The Court rejects this argument as without merit. The Court also rejects as meritless the plaintiffs' claim that the ordinance violates their substantive due process rights. There is no basis for finding that the ordinance is arbitrary, capricious, or irrational, or that it is unduly oppressive.

### III. *State Constitutional Law Claims*

The Court abstains from ruling on the plaintiffs' state constitutional claims, and hereby dismisses them without prejudice.

### IV. *Conclusion*

The Court hereby GRANTS the City of Kent's motion for summary judgment and dismisses all of the plaintiffs' federal law claims with prejudice. The Court dismisses the plaintiffs' state law claims without prejudice. The Clerk is directed to enter judgment in favor of the defendant on the plaintiffs' federal law claims.

IT IS SO ORDERED.